## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MAINE

| | |
|---|---|
| ANGELA GROSSO and CAMILLA GROSSO, | |
| *Plaintiffs*, | Civil Action No.: |
| v. | |
| TOYOTA MOTOR CREDIT CORPORATION d/b/a LEXUS FINANCIAL SERVICES, EQUIFAX INFORMATION SERVICES LLC, EXPERIAN INFORMATION SOLUTIONS, INC., AND TRANS UNION, LLC, | **COMPLAINT** |
| | **JURY TRIAL DEMANDED** |
| *Defendants*. | |

## PRELIMINARY STATEMENT

1.     This is an action for actual, statutory, treble and punitive damages, declaratory relief, and statutory attorney's fees and costs brought pursuant to the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq. ("FCRA") and Maine Fair Credit Reporting Act, 10 M.R.S.A. §1306, et seq. ("MFCRA").

2.     Specifically, Plaintiff Angela Grosso and Camilla Grosso (collectively, "Plaintiffs") bring this action for damages resulting from inaccurate reporting of tradelines on their credit reports and Defendants' failures to, *inter alia*, conduct reasonable investigations and correct the reports.

3.     The Defendants consist of three national credit reporting agencies:  Equifax Information Services LLC ("Equifax"), Experian Information Solutions, Inc. ("Experian"), and Trans Union, LLC ("Trans Union") (collectively, the "CRA Defendants"); and a "furnisher[s] of information" to those agencies:  Toyota Motor Credit Corporation d/b/a Lexus Financial Services (the "Furnisher Defendant" or "TMCC").

4.      Plaintiffs discovered inaccurate derogatory information on their credit reports and disputed the same directly with the CRA Defendants who, in turn and upon information and belief, communicated the same to the Furnisher Defendant.

5.      The Furnisher Defendant is a "furnisher of information" within the meaning of the FCRA (15 U.S.C. § 1681s-2, *et seq.*).

6.      The Furnisher Defendant violated the FCRA by:

    a.      failing to conduct a reasonable investigation of the dispute(s),

    b.      failing to review all relevant information provided by consumer reporting agencies, and

    c.      failing to promptly modify, delete, or permanently block any information it could not verify as accurate, in violation of 15 U.S.C. §1681s-2(b)(1).

7.      The CRA Defendants violated the FCRA by:

    a.      failing to conduct a reasonable reinvestigation of the dispute(s) and delete or modify that information, in violation of § 1681i, and upon information and belief, failing to perform certain other related duties pursuant to and in violation of that same provision; and

    b.      failing to maintain procedures to ensure the maximum possible accuracy of the information it reported about Plaintiff, in violation of § 1681e(b).

8.      As a direct and proximate result of Defendants' negligent and willful actions, conduct, and omissions, including publishing inaccurate derogatory information to third-parties, Plaintiff suffered cognizable actual damages (both economic and non-economic) including but not limited to credit denials, provision of credit at higher interest rates, damage to reputation, emotional distress, anxiety, depression, embarrassment, aggravation, and frustration.

2

9.     Each of the Defendant's willful violations of the Plaintiffs' rights entitles them to an award of punitive damages.

## JURISDICTION AND VENUE

10.     The Court has jurisdiction pursuant to 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

11.     Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. § 1367.

12.     Jurisdiction over Plaintiff's claims for declaratory relief is conferred by 28 U.S.C. § 2201.

13.     Venue is proper in this District because Plaintiffs reside in this District, a substantial part of the events and occurrences underlying this litigation occurred within this District, and Defendants regularly conduct business here.

## PARTIES

14.     Plaintiff Angela Grosso is a natural person and citizen of South Portland residing in Cumberland County, Maine.

15.     Plaintiff Camilla Grosso is a natural person and citizen of South Portland residing in Cumberland County, Maine.

16.     Plaintiff Angela Grosso and Plaintiff Camilla Grosso (collectively, "Plaintiffs") are "consumers" as defined by each of the relevant statutes.

17.     Defendant Toyota Motor Credit Corporation d/b/a Lexus Financial Services ("TMCC") is a foreign corporation with its principal place of business in Plano, Texas.

18.     TMCC is engaged in the business of providing consumer financing and reports credit information to the major credit reporting agencies.

19.     TMCC also is engaged in the business of collecting debts using the name "Lexus Financial Services."

20.     Defendant Experian Information Solutions, Inc. is a foreign corporation with its principal place of business in Costa Mesa, California.

21.     Defendant Equifax Information Services LLC is a foreign limited liability company with its principal place of business in Atlanta, Georgia.

22.     Defendant Trans Union, LLC is a foreign limited liability company with its principal place of business in Chicago, Illinois.

## FACTUAL ALLEGATIONS

20.     In March 2022, Plaintiffs co-financed a 2015 Nissan Rogue with TMCC.

21.     The vehicle was financed under a retail installment sale contract, and Plaintiffs made regular monthly payments without issue until December 2023.

22.     On December 18, 2023, the vehicle was involved in a total loss accident.

23.     The vehicle was declared a total loss by the Plaintiffs' auto insurance company, Progressive Insurance, which paid $10,724.97 toward the loan balance.

24.     After the insurance payment, the remaining balance on the loan was $2,214.51.

25.     On January 24, 2024, TMCC sent Plaintiffs a written notice informing them of the outstanding balance and provided 30 days to set up a payment plan.

26.     On February 23, 2024, Plaintiffs and TMCC agreed to a 12-month payment plan, which required Plaintiffs to make monthly payments of $198.35.

27.     Plaintiffs made all required payments timely from February through July 2024.

28.     For the month of August 2024, on August 30, 2024, at 7:14 p.m. Eastern Time, Plaintiffs scheduled a $200 payment using the TMCC website.

29.     TMCC's website states:  "A payment scheduled before 5:00 p.m. PST will be credited to your account that same day."

30. However, after the payment was scheduled, TMCC's website stated that the payment would clear on September 2, 2024, due to the Labor Day holiday.

31. On or about August 30, 2024, despite the scheduled payment and without prior notice, TMCC charged off the account.

32. Shortly thereafter, TMCC began reporting the account as charged off to each of the CRA Defendants.

33. TMCC cancelled the scheduled August 2024 payment and sent the account to collections with Radius Global Solutions.

34. On September 12, 2024, Plaintiff Angela Grosso received a credit alert from Credit Karma indicating that her credit score had dropped by over 100 points.

35. Upon contacting TMCC, Plaintiffs learned that the account had been charged off and referred to Radius Global Solutions for collection.

36. Plaintiffs promptly contacted Radius Global Solutions, which offered to resolve the remaining balance on the account for $575.00.

37. Neither TMCC, nor Radius Global Solutions provided an explanation for why the account had been marked as a charge-off while a payment was pending.

38. The TMCC account tradeline on each of the Plaintiffs' credit reports with the CRA Defendants does not indicate that TMCC received any late payments from Plaintiffs, but incorrectly reflects that the account was charged off for multiple months.

39. Under the duress being referred to collections and the continued erroneous reporting of the debt as a charge-off on Plaintiffs' credit reports, Plaintiffs paid $575 to resolve the TMCC account on September 12, 2024.

40. Despite the payment, the charge-off remained on Plaintiffs' credit reports with Experian, Equifax, and TransUnion, marked as a "Paid Charge-Off."

41. In or about mid-September 2024, Angela Grosso filed online disputes with Equifax, Experian, and TransUnion regarding the inaccurate charge-off reporting.

42. The dispute process on each of the CRA Defendants' websites was limited by predefined categories that did not fully reflect Angela Grosso's disputes.

43. Although the credit reporting agencies provided the option to add a consumer statement to explain the situation, the character limit imposed by the system prevented Angela Grosso from including a comprehensive account of the circumstances.

44. Upon information and belief, Angela Gross's disputes were received by Equifax, Experian and Trans Union, respectively, and sent to TMCC.

45. Despite receipt of the disputes, neither Equifax, Experian, Trans Union nor TMCC corrected the tradeline on either of the Plaintiffs' credit reports, and the negative charge-off remained reported on the credit reports for each of the Plaintiffs.

46. On October 21, 2024, a TMCC representative confirmed to Angela Grosso that Plaintiffs had made all payments prior to the charge-off and assured her that TMCC would submit updates to the credit reporting agencies correcting incorrect charge-off (as well as any other errant tradeline data).

47. Despite this assurance, the charge-off status on both Plaintiffs' credit reports remained unchanged. The inaccurate reporting continued to reflect negatively on each of the Plaintiffs' credit history.

48. On October 13, 2024, Plaintiffs filed a complaint with the Consumer Financial Protection Bureau (CFPB), requesting an investigation and the removal of the charge-off from the two Plaintiffs' credit reports.

49. TMCC responded to the CFPB complaint on October 28, 2024, asserting that the August 2024 payment was not received on time and the charge-off was therefore valid.

6

50.    On June 10, 2025, Angela Grosso again disputed the inaccurate charge-off and account information from TMCC on her credit reports with Equifax, Experian, Trans Union, and TMCC via USPS certified mail.

51.    Upon information and belief, Equifax, Experian and Trans Union each received Angela Grosso's disputes and sent them to TMCC (in addition to the dispute that was sent by Angela Grosso directly to TMCC).

52.    Despite receipt of the disputes, neither Equifax, Experian, Trans Union, nor TMCC corrected the tradeline on Angela Grosso's credit reports, and the negative charge-off on the TMCC tradeline remains on each of her credit reports.

53.    On June 10, 2025, Camilla Grosso also disputed the inaccurate charge-off and account information from TMCC on her credit reports with Equifax, Experian, Trans Union, and TMCC via USPS certified mail.

54.    Upon information and belief, Equifax, Experian, and Trans Union each received Camilla Grosso's disputes and sent them to TMCC (in addition to the dispute that was sent by Camilla Grosso directly to TMCC).

55.    Despite receipt of the disputes, neither Equifax, Experian, Trans Union, nor TMCC corrected the tradeline on Camilla Grosso's credit reports, and the negative charge-off on the TMCC tradeline remains on each of her credit reports.

56.    The inaccurate reporting of the charge-off has caused significant damage to each of the Plaintiffs credit scores and financial standing.

57.    The inaccurate information has been conveyed to each of the Plaintiffs' existing creditors and, upon information and belief, used to by them to evaluate them as candidates for credit offers, including extending existing credit limits, and providing more favorable credit terms.

58.    For instance, due to the charge-off, Angela Grosso was unable to refinance her mortgage at a lower interest rate, resulting in a significant financial burden.

59.    Additionally, several of Angela Grosso other creditors, including American Express, reduced her credit limits, which further increased her credit utilization ratio and caused additional harm to her credit.

60.    As a result of Defendants' actions, Plaintiffs experienced emotional distress, anxiety, and frustration.

61.    Despite Plaintiffs' efforts to resolve the issue, the inaccurate reporting remains on each of their credit reports, causing ongoing harm.

### FIRST CAUSE OF ACTION
### Fair Credit Reporting Act § 1681e(b) and § 1681i
### Against the CRA Defendants

62.    Plaintiffs repeats and re-alleges each of the foregoing paragraphs of this Complaint as if fully set forth herein.

63.    The CRA Defendants each violated multiple sections of 15 U.S.C. § 1681i by its acts and omissions including but not limited to:

a.    failing to conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information or delete the item from Plaintiffs' credit files in violation of § 1681i(a)(1);

b.    by failing to review and consider all relevant information submitted by Plaintiffs in violation of § 1681i(a)(4); and

c.    by failing to properly delete the disputed inaccurate items of information from Plaintiffs' credit files or modify item of information upon a lawful reinvestigation in violation of § 1681i(a)(5).

64.     Each of the CRA Defendants violated 15 U.S.C. § 1681e(b) by their conduct, acts and omissions including but not limited to failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy of the information concerning Plaintiffs in the preparation of their credit reports and credit files that the CRA Defendants published and maintained.

65.     As a result of the CRA Defendants' violations of § 1681i and § 1681e(b), Plaintiffs suffered actual damages including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation, anguish and the other damages set forth herein.

66.     The CRA Defendants' conduct is also in violation of the MFCRA, 10 M.R.S.A. § 1309(1), for failure to comply with the federal FCRA.

67.     These violations of § 1681i and § 1681e(b) were willful, rendering the CRA Defendants liable for actual damages, statutory damages, treble damages, costs and reasonable attorney's fees, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and 10 M.R.S.A. § 1310-C.

68.     In the alternative, the CRA Defendants were negligent, entitling Plaintiffs to recover actual damages, costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1681o and 10 M.R.S.A. § 1310- D.

**SECOND CAUSE OF ACTION**
**Fair Credit Reporting Act § 1681s-2(b)**
**Against The Furnisher Defendant**

69.     Plaintiffs repeats and re-alleges each of the foregoing paragraphs of this Complaint as if fully set forth herein.

70.     Congress enshrined within the FCRA the "need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy."  15 U.S.C. §1681(a)(4).

9

71.     Congress stated plainly the purpose of the FCRA, namely "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information . . .." 15 U.S.C. §1681(b).

72.     The Furnisher Defendant violated §1681s-2(b) by its acts and omissions, including, but not limited to:

      a.     failing to conduct a reasonable investigation of Plaintiffs' dispute(s),

      b.     failing to review all relevant information provided by consumer reporting agencies, and,

      c.     failing to promptly modify, delete, or permanently block any information it could not verify as accurate, in violation of §1681s-2(b)(1).

73.     As a result of the Furnisher Defendant's violations of §1681s-2(b)(1), Plaintiffs suffered actual damages including but not limited to loss of credit, damage to reputation, embarrassment, humiliation, anguish and the other damages set forth herein.

74.     The Furnisher Defendant's conduct is also in violation of the MFCRA, 10 M.R.S.A. § 1309(1), for failure to comply with the federal FCRA.

75.     These violations of §1681s-2(b)(1) were willful, rendering the Furnisher Defendant liable for actual damages, statutory damages, treble damages, costs and reasonable attorney's fees, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and 10 M.R.S.A. § 1310-C.

76.     In the alternative, the Furnisher Defendant was negligent, entitling Plaintiffs to recover actual damages, costs, and reasonable attorney's fees pursuant to 15 U.S.C. § 1681o and 10 M.R.S.A. § 1310- D.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs seeks judgment in her favor and damages against Defendants:

A.     awarding Plaintiffs actual damages, treble damages, statutory damages, punitive damages, costs, and reasonable attorneys' fees; and

B.     such other and further relief, including equitable and declaratory relief, as may be necessary, just, and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs hereby demands a trial by jury of all issues triable by jury.


Dated: December 17, 2025

Respectfully Submitted,

*/s/ Thomas A. Cox*
Thomas A. Cox, Esq., Me. Bar No. 1248
P.O. Box 1083
Yarmouth, Maine 04096
(207) 749-6671
tacsail@icloud.com

*/s/Evan S. Rothfarb*
Evan S. Rothfarb
(Pro Hac Vice Forthcoming)
Schlanger Law Group, LLP
60 East 42nd Street, 46th Floor
New York, NY 10165
T: 212-500-6114
F: 646-612-7996
E: erothfarb@consumerprotection.net

*Attorney for Plaintiffs*

11